**Opinion filed March 26, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00287-CV

_____

## IN THE INTEREST OF M.L. AND E.L., CHILDREN

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 11095-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from the trial court's order terminating the parental rights of the mother and father of their children, M.L. and E.L.[1]  *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2025).  Only the mother appealed.  In five issues, Appellant challenges the sufficiency of the evidence to support the trial court's findings under Section 161.001(b)(1)(D), (E), (M), and (Q)[2] of the Texas

---

[1]We use initials to refer to the children.  *See* TEX. R. APP. P. 9.8(b).

[2]We note that the legislature has amended Section 161.001(b)(1), which resulted in the renumbering of several provisions.  *See* Act of May 16, 2025, 89th Leg. R.S. ch. 211, § 2, 2025 Tex. Sess. Law Serv. 573, 574–75.  The amendments only apply to suits affecting the parent-child relationship that are pending on or after the effective date of the amendments; thus, we apply the law in effect at the time the suit was pending below.  *Id.* § 3.

Family Code, and that termination of her parental rights is in the children's best interest. *See id.* § 161.001(b)(1)(D), (E), (M), (Q), (b)(2). Appellant further contends that the Department should have been estopped from seeking to terminate her parental rights. We affirm in part, and we reverse and remand in part.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1), and that termination is in the best interest of the children. *Id.* Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant:

> (D) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children;

> (E) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children;

> (M) had her parent-child relationship terminated with respect to another child based on a finding that her conduct was in violation of [subsections] (D) or (E) one year or less before the Department of Family and Protective Services (the Department) was granted managing conservatorship of the children; and

> (Q) was the cause of the children being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription.

*See id.* § 161.001(b)(1)(D), (E), (M), (Q), (d-1). The trial court further found that termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2).

2

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (first quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); and then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of the children, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72

3

(Tex. 1976). These include, but are not limited to: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by their past conduct in determining whether termination of a parent's parental rights is in

the children's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## The Evidence Presented at Trial

The Department received a report in February 2023 that Appellant was "getting high on ecstasy, cocaine, and methamphetamine" while caring for M.L., who was almost nine months old at that time. Department caseworker Marissa Black spoke to Appellant, who admitted to recent cocaine use. The father was incarcerated. Appellant submitted to a drug screen on February 9, 2023, and tested positive for cocaine, opiates, and oxycodone.

Appellant began participating in family-based safety services (FBSS).[3] In June 2023, while Appellant was pregnant with E.L., Appellant and M.L. tested positive for cocaine. The Department was granted temporary managing

---

[3]"Family-based safety services are protective services provided to a family whose children are not in the conservatorship of the Department." 40 TEX. ADMIN. CODE pt. 19 ch. 700 subch. G div. 2 § 710 (2021). The Department's Child Protective Services Division provides family-based safety services to families and children "to: (1) protect the children from abuse and neglect; (2) help the family reduce the risk of future abuse or neglect; and (3) prevent the removal of the children from their home." *Id.*

conservatorship of M.L. on June 26, 2023. Appellant gave birth to E.L. on July 10, 2023, and the Department was granted temporary managing conservatorship of E.L.

The Department created a family plan of service for Appellant that the trial court modified, approved, and adopted as an order of the court in September 2023. Appellant tested positive for cocaine in October 2023 and again in June 2024 while she was pregnant with her third child, Z.F. She lived with Z.F.'s father, J.F., while the case involving M.L. and E.L. was pending. Under a separate cause number, the Department was granted temporary managing conservatorship of Z.F. after she was born in July 2024.

Following Z.F.'s removal, Appellant participated in individual counseling and followed the recommendations of her psychological assessment. She was also prescribed medication to improve her mental health and address her anxiety. She also completed an intensive outpatient substance abuse treatment program. Since her positive drug test in June 2024, Appellant regularly submitted to drug screens and tested negative for illegal substances.

Appellant was granted a transition to monitored return of the children in February 2025 due to consistent negative drug tests and compliance with her service plan. *See* FAM. § 263.403. However, after J.F. tested positive for marihuana metabolite in May 2025, the Department moved to terminate the transition to monitored return. Despite Appellant and the children testing negative for illegal substances, J.F. moving out of Appellant's home, Appellant leaving her employment to be home with the children full time, and offering to have a family member move in with her and the children, the trial court ended the monitored return. M.L. and E.L. were placed with their paternal grandmother, M.G.

On May 30, one week after the hearing on the monitored return, the parties convened for a pretrial hearing. The attorney for the Department informed Appellant's counsel and the trial court that "[e]xactly what [the] request is going to

6

be" at the upcoming final hearing "is still a little unclear . . . given all the recent changes, but the Department . . . is not intending to seek termination." However, on June 9, Appellant's and J.F.'s parental rights to Z.F. were terminated after a final hearing.

The parties convened on July 1, 2025 for the final hearing regarding Appellant's and the father's parental rights to M.L. and E.L. The father, who had since been released from incarceration and re-arrested, was again incarcerated and was not present for the final hearing. Prior to the presentation of evidence, Appellant's counsel moved for a continuance and informed the trial court:

> The Department announced at pretrials that they would not be seeking termination . . . and informed me this morning that that is not the case. And while I understand and realize that their petition seeks termination . . . my client had expectations based on announcements that were made, and I don't believe that [the Department] [is] engaging in fair dealing.

The trial court denied the motion for continuance given the impending dismissal date and the availability of counsel and witnesses, and the final hearing commenced. Regarding the children's best interest, Kristian Castro, the permanency case manager, testified that termination would "give them permanency[,]" and that "parental rights were also terminated for [Z.F.]." Although Appellant's drug use was the primary concern that led to the removal of each child, Castro agreed that Appellant worked to achieve sobriety, and that there were no additional concerns other than her current lack of income and inability to pay for housing.

M.G. testified that, based on her discussions with a Department supervisor, she "was under the impression" that she would be appointed permanent managing conservator until Appellant or the father could care for the children. It was not until the day of the final hearing that she "learned that [the Department] [was] looking at terminating" the parents' rights to M.L. and E.L. M.G. expressed her willingness to be a long-term placement for the children, who were doing great in her home.

7

At the conclusion of the hearing, the trial court discussed possible outcomes with the attorneys. The attorney ad litem ultimately agreed that, based on M.G.'s willingness to act as permanent managing conservator indefinitely, termination of the parents' parental rights may not be in the children's best interest. Notwithstanding, on September 25, 2025, the trial court issued its order terminating Appellant's parental rights to the children under Sections 161.001(b)(1)(D), (E), (M), and (Q), and found termination to be in the children's best interest. *See* FAM. § 161.001(b)(1)(D), (E), (M), (Q), (b)(2), (d-1). This appeal followed.

*Section 161.001(b)(1)(D) and (E) – Endangerment*

In her fifth issue, Appellant challenges the trial court's findings that she endangered her children. *See id.* § 161.001(b)(1)(D), (E). Because of our resolution of Appellant's first issue, we need only address the legal sufficiency challenge to the trial court's findings under Section 161.001(b)(1), which could potentially result in a rendition rather than a remand. *See J.F.C.*, 96 S.W.3d at 266; *In re J.B.*, 11-22-00305-CV, 2023 WL 3213089, at *5–6 (Tex. App.—Eastland May 3, 2023, no pet.) (mem. op.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," or "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," *In re E.N.C.*, 384 S.W.3d 796,

8

803 (Tex. 2012), but "does not require actual harm," *R.R.A.*, 687 S.W.3d at 277 (citing *Boyd*, 727 S.W.2d at 533).

To terminate a parent's rights for endangerment under subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child,'" nor must "the child actually suffer[] injury." *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024). "[T]ermination under [subsection] (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *C.E.*, 687 S.W.3d at 310. "A parent's drug use, violence, or other abuse may make the child's environment endangering to the child." *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.). "A parent acts 'knowingly' when the parent is aware that the environment creates a potential danger to the child but the parent disregards that risk." *Id.* Because conditions or surroundings cannot endanger a child unless the child is exposed thereto, the relevant time frame for evaluating subsection (D) is before the child's removal. *J.W.*, 645 S.W.3d at 749.

Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the child's well-being was the direct result of the parent's acts, omissions, or failures to act. *In re J.S.*, 687 S.W.3d 541, 550 (Tex. App.—Eastland 2024, no pet.). Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277. A parent's actions prior to and after the child's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("[E]ndangering conduct may include the parent's actions before the child's birth and may relate to the parent's actions while the parent

9

had possession of other children."). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (Illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child.).

The evidence established that the Department's involvement began due to Appellant's illegal drug use while caring for M.L., which continued during Appellant's pregnancies with E.L. and Z.F. The evidence likewise demonstrated that the children tested positive for cocaine. "Drug use during pregnancy supports a finding of direct injury to the child." *In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024). And it is undisputed that "a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *J.S.*, 687 S.W.3d at 551 (quoting *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)); *see also In re A.R.D.*, 694 S.W.3d 829, 840 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (affirming endangerment finding based in part on the mother's treatment of her other children and history with the Department that "included neglect, drug abuse, and criminal activity").

Viewing the evidence in the light most favorable to the trial court's finding under subsection (E), we hold that a rational trier of fact could have formed a firm belief or conviction that Appellant engaged in conduct that endangered the physical or emotional well-being of the children. FAM. § 161.001(b)(1)(E); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Accordingly, we overrule Appellant's fifth issue to

10

the extent that it relates to the legal sufficiency of the evidence to support the trial court's finding under Section 161.001(b)(1)(E). Because only one statutory ground is necessary to support termination, we need not address Appellant's second and fourth issues in which Appellant challenges the trial court's termination findings under subsections (D), (M), and (Q).[4] *See* FAM. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019); *see also* TEX. R. APP. P. 47.1.

### The Best Interest of the Children

In her first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children. "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. Generally, we are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *J.P.B.*, 180 S.W.3d at 573.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas

---

[4]However, we not that the State concedes that there was no evidence presented that either child was born addicted to alcohol or a controlled substance. *See* FAM. § 161.001(b)(1)(Q). Additionally, Appellant timely appealed the order terminating her parental rights to Z.F., which is what the Department introduced to support the finding under subsection (M). In December 2025, this court reversed the trial court's termination order in that case. *See In re Z.F.*, No. 11-25-00187-CV, 2025 WL 3672304, at *1–5 (Tex. App.—Eastland Dec. 18, 2025, Rule 53.7(f) motion granted) (mem. op.) (reversing termination order for the trial court's and Department's failure to strictly adhere to the Indian Child Welfare Act).

2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.)). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interest[] of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). Further, evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of a child's best interest determination. *See In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

It is undisputed that Appellant's drug use endangered her children and, considered in isolation, weighs in favor of termination. However, as established, Appellant tested negative for the year prior to the final hearing and complied with her service plan requirements such that the Department agreed to a monitored return. Castro agreed that Appellant had worked to achieve sobriety, Appellant did not pose a danger to the children, and there were no concerns about Appellant's parental abilities while the children were in her care during the monitored return. Even after the monitored return ended, the Department intended to request the appointment of M.G. as permanent managing conservator without terminating Appellant's parental rights. The only development between May, when the Department advised that it did not intend to seek termination, and the final hearing in July was that Appellant's rights to Z.F. had been terminated.

Castro was the only witness to testify that terminating Appellant's parental rights was in the children's best interest. She explained that termination would "give them permanency" and "was in line with . . . receiving termination in [Z.F.'s] case." It is true that a parent's history with the Department and treatment of other children are relevant considerations. *See R.R.A.*, 687 S.W.3d at 279; *In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug abuse, or

12

lack of care for the children"). But aside from Appellant's endangering conduct that led to the removal of her children, there was no additional evidence that the termination of Appellant's parental rights to Z.F. is favored in this case. The Department's case involving Z.F. began a year after E.L. was removed. Z.F. was placed in an adoptive home whereas M.L. and E.L. lived with M.G., who was prepared to care for the children without terminating Appellant's and the father's parental rights. In that regard, Castro acknowledged that M.L. and E.L. would have contact with Z.F. regardless of whether Appellant's parental rights were terminated, and Castro conceded that M.G.'s willingness to be the children's permanent managing conservator "is considered permanency." Therefore, Castro's testimony that termination would give M.L. and E.L. "permanency" is conclusory and unfounded. Such conclusory testimony does not amount to more than a scintilla of evidence; in fact, "it is no evidence at all." *In re M.A.J.*, 612 S.W.3d 398, 410 (Tex. App.—Houston [1st Dist.] 2020, pet. denied); *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.).

M.G. testified that, regardless of the Department's recommendation, she hoped that the parents can prove their ability to care for the children in the future. She said that the children "belong in a safe environment with their parents." Even the attorney ad litem eventually agreed that "it is always in the realm of possibility" that Appellant could demonstrate her ability to parent her children, and that M.G.'s willingness to care for the children long-term supports retaining the parents' rights rather than terminating. Thus, we have found nothing in the record to indicate that the termination of Appellant's rights to Z.F. has any bearing on M.L.'s and E.L.'s best interest. *See In re B.R.*, 456 S.W.3d 612, 616–18 (Tex. App.—San Antonio 2015, no pet.) (conclusory testimony was insufficient evidence to support best interest finding).

At the time of the final hearing, M.L. was three years old and E.L. was almost two. When children are too young to express their desires, the factfinder may consider whether the children have bonded with their caregivers, are well-cared for by them, and whether the children have spent minimal time with a parent. *In re E.J.M.*, 673 S.W.3d 310, 334 (Tex. App.—San Antonio 2023, no pet.). There is no evidence of the children's desires, but they spent nights and weekends with Appellant while they were transitioning to a monitored return for a few months prior to the final hearing. As established, the sparse record permits the inference that Appellant demonstrated her ability and willingness to prioritize her children's well-being and to provide them with a safe, drug-free home environment. For instance, Appellant attempted to continue the monitored return after J.F.'s positive drug test by leaving her employment and having J.F. move out of the home. Appellant was still unemployed by July 2025 but was applying to jobs. She rescheduled parent-child visitation for a job interview. Appellant also had transportation issues that interfered with her visitation, but once those were resolved, she attended most scheduled visits and engaged with her children. Just as "an uninterested parent poses an emotional and physical danger to the child" now and in the future, *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.), evidence of a parent's willingness and commitment to meet the child's emotional and physical needs now and in the future favors the preservation of the parent-child relationship. *See Holley*, 544 S.W.2d at 371–72. Notably, Castro testified that aside from Appellant's lack of income and resulting inability to pay for housing, "there would [not] be any" concerns. When asked whether the Department would still recommend termination if Appellant could pay for her housing, Castro replied, "I'm not sure."

There was limited evidence regarding the children's physical and emotional well-being. Castro testified that M.L. has had difficulty adjusting in the past but has

14

gone through services and is doing well. He "appear[ed] to be a little bit behind" developmentally but was not receiving services at the time of the final hearing. E.L. was not receiving services, was developmentally on track, and was also doing well. Importantly, the children's safety and well-being under M.G.'s care does not, by itself, show that the children's best interest is served by terminating Appellant's parental rights altogether. *See In re T.S.W.*, No. 11-21-00231-CV, 2022 WL 969526, at *4 (Tex. App.—Eastland Mar. 31, 2022, no pet.) (mem. op.). Here, the trial court was presented with viable, realistic alternatives to terminating Appellant's parental rights. *See In re J.J.R.S.*, 627 S.W.3d 211, 223 (Tex. 2021) (The Family Code "does not require termination when a severe restriction or limitation on access can also be in the best interest of the child while preserving the possibility that the parent and child may continue to have a relationship in the future."); *see also In re W.C.*, 98 S.W.3d 753, 766 (Tex. App.—Fort Worth 2003, no pet.) ("Although [a parent's] behavior may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere."). The stability of M.G.'s home when measured against Appellant's sustained period of sobriety and improvement in her ability to adequately parent her children does not support the trial court's best interest determination.

The evidence viewed in the light most favorable to the trial court's best interest finding is legally sufficient to support the trial court's determination that termination of Appellant's parental rights is in the children's best interest. *See J.W.*, 645 S.W.3d at 741. However, we cannot conclude that the trial court's determination is supported by factually sufficient evidence. *See M.A.J.*, 612 S.W.3d at 410. Considering all the evidence as it relates to Appellant's actions and inactions, the absence of evidence indicating emotional and physical danger to the children now and in the future, Appellant's ability to meet the emotional and physical needs of the

children now and in the future, and Appellant's efforts and improved parental abilities and stability, we hold that the evidence is insufficient to support the trial court's finding that termination of Appellant's parental rights is in the children's best interest. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72; *see also In re T.M.*, No. 11-25-00273-CV, 2026 WL 770620, *8–9 (Tex. App.—Eastland Mar. 19, 2026, no pet. h.) (mem. op.) (holding, for the same or similar reasons, that insufficient evidence existed to support the trial court's best interest finding); *J.B.*, 2023 WL 3213089, at *5–6 (same); *In re A.O.*, No. 11-22-00290-CV, 2023 WL 2799132, at *3–5 (Tex. App.—Eastland Apr. 6, 2023, pet. denied) (mem. op.) (same); *T.S.W.*, 2022 WL 969526, at *4–5 (same).

Accordingly, we sustain Appellant's first issue.

*Judicial Estoppel*

Appellant contends in her third issue that the Department was judicially estopped from seeking to terminate her parental rights to M.L. and E.L. based on a previous representation that it did not intend to seek termination. "Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage." *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009). Judicial estoppel only applies "if the successful representation arose in a different case or, at most, 'in another phase' of the same case." *George Fleming and Fleming & Assoc., L.L.P. v. Wilson*, 694 S.W.3d 186, 192 (Tex. 2024) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). The doctrine of judicial estoppel is not invoked where, as here, the contradictory positions are taken in the same proceeding. *See id.* Accordingly, we overrule Appellant's third issue.

*This Court's Ruling*

We reverse the order of the trial court insofar as it terminated the parental rights of Appellant to M.L. and E.L., and we remand this cause to the trial court for

16

further proceedings consistent with this opinion.[5]  *See* TEX. R. APP. P. 44.1(b).  We affirm the order of the trial court in all other respects.

Any proceeding on remand must be commenced within 180 days of this court's mandate.  TEX. R. APP. P. 28.4(c).

W. BRUCE WILLIAMS

JUSTICE

March 26, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[5]Our holdings do not alter or affect the trial court's appointment of the Department as the children's managing conservator.  *See In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007).